## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IVY BAILEY; CAROLE VETTRUS; KEVIN
PSIK; BETTY NASH; DONALD RUSSELL
MAKOWSKI; MICHIGAN EDUCATION
ASSOCIATION; ADRIAN EDUCATION
ASSOCIATION; MIDLAND CITY
EDUCATION ASSOCATION; SOUTHFIELD
MICHIGAN EDUCATIONAL SUPPORT
ASSOCIATION; GARDEN CITY
EDUCATION ASSOCATION; NILES
EDUCATION ASSOCIATION; AFT
MICHIGAN; DETROIT FEDERATION
OF TEACHERS, AFT LOCAL 231; TAYLOR
FEDERATION OF TEACHERS; ONAWAY
FEDERATION OF TEACHERS;
WATERFORD FEDERATION OF
TEACHERS; SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 517M;
and MICHIGAN AFSCME COUNCIL 25,

        Plaintiffs,

v.

        Case No. 12-CV-11504
        Honorable Denise Page Hood

EDWARD CALLAGHAN, in his official
capacity as chairman of the Michigan
Employment Relations Commission;
CHRISTINE DERDARIAN, in her official
capacity as member of the Michigan
Employment Relations Commission; and
NINO GREEN, in this official capacity as a
member of the Michigan Employment
Relations Commission,

        Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I.    INTRODUCTION

This matter involves an equal protection and first amendment challenge to a recent amendment to the Public Employment Relations Act ("PERA"). MICH. COMP. LAWS §§ 423.201-217. The Michigan Education Association ("MEA") and its local affiliates Adrian Education Association, Midland City Education Association, Southfield Michigan Educational Support Association, Garden City Education Association, Niles Education Association; AFT-Michigan and its local affiliates Detroit Federation of Teachers, Onaway Federation of Teachers, Taylor Federation of Teachers, and Waterford Federation of Teachers; AFSCME Council 25; and Service Employees Union Local, 517M ("Local 517M") (collectively "the Unions"); and Carole Vettrus, Ivy Bailey, Kevin Psik, Betty Nash, and Donald Russell Makowski filed the present action in this Court on April 4, 2012. The action was brought against Defendants Edward Callaghan, chairman of the Michigan Employment Relations Commission ("MERC"), Christine Derdarian, MERC member, and Nino Green, MERC member, in their official capacities.  The Complaint alleges equal protection and first amendment violations and requests declaratory and injunctive relief.

Now before the Court is Plaintiffs' Motion for Preliminary Injunction. The matter has been fully briefed and the Court has considered oral arguments. For the reasons stated below, Plaintiffs' Motion for Preliminary Injunction is GRANTED.

## II.    BACKGROUND

The Unions are a collection of statewide and local affiliate unions that advocate for the interests of public school employees in Michigan. The Unions' advocacy efforts are primarily

2

supported by membership dues and fees, which are largely collected through payroll deductions administered by the public school district pursuant to collective bargaining agreements. Payroll deductions are the most convenient and efficient way to collect membership dues.

During the 2011 legislative session, the Unions advocated against the passage of four bills that eventually became Public Acts 100, 101, 102, and 103. These bills limited the scope of collective bargaining for teachers. After enactment, several of the statewide Unions initiated a public campaign to recall legislators that were in support of those public acts. In July 2011, the Speaker of the House of Representatives stated that the MEA had "declared war." On September 9, 2011, the Senate Majority Leader stated that "[t]he teachers union[s], specifically Michigan Education Association, have lost their way and public school employees should no longer be forced to join them."

On September 8, 2011 House Bill 4929 was introduced. House Bill 4929 deemed it unlawful interference for a school employer to utilize public school resources to collect membership dues and fees for a labor organization. It passed in the House and was transmitted to the Senate on September 20, 2011. House Bill 4929 sat for five months without action.

On March 6, 2012, the Unions announced a petition to place an amendment to the Michigan Constitution on the November 2012 ballot. The proposed amendment would create a state constitutional right to collective bargaining. On March 7, 2012, the Senate submitted an altered House Bill 4929 for vote and it passed 20 to 18. On the same day, the House voted to pass House Bill 4929 by a vote of 56 to 54. Governor Rick Snyder signed it into law on March 15, 2012.

Public Act 53 amended section 10(1) (b) of the PERA. MICH. COMP. LAWS §

423.210(1)(b). Act 53 made "[a] public school employer's use of public school resources to assist a labor organization in collecting dues or service fees from wages of public school employees…a prohibited contribution to the administration of a labor organization." *Id.* However, Act 53 allowed the continued collection of dues pursuant to a collective bargaining agreement until the expiration, termination, extension, or renewal of the collective bargaining agreement. The collection of dues through payroll deductions was immediately terminated for several Unions that did not have collective bargaining agreements presently. These actions resulted in the filing of the present action.

## III.   ANALYSIS

The Court must balance and consider four factors when determining the appropriateness of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a): (1) movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury absent the injunction; (3) the harm to others that will occur if the injunction is granted; and (4) whether the injunction would serve the public interest. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); *Lucero v. Detroit Pub. Sch.*, 160 F. Supp.2d 767, 778 (E.D. Mich. 2001). The purpose of a preliminary injunction is to maintain the relative positions of the parties pending a resolution on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  The Court must make specific findings on each factor unless fewer factors would be dispositive. *Bonnell*, 241 F.3d at 809; *Lucero*, 160 F. Supp.2d at 779.  "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*,

755 F.2d 1223, 1229 (6th Cir. 1985).

**A.     Likelihood of Success**

**1.     Equal Protection**

The Unions concede, for the purpose of this motion, that the Court should analyze their Equal Protection claim under rational scrutiny. Accordingly, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). "In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Id.* at 632. However, there must be some independent and legitimate purpose for the legislation that is separate from the "purpose of disadvantaging the group burdened by the law." *Id* .at 633.

When interpreting the PERA, the Michigan Supreme Court looks to federal precedent on the analogous National Labor Relations Act ("NLRA") for guidance. *Grandville Municipal Executive Ass'n v. City of Grandville*, 453 Mich. 428, 436 (1996) ("In construing the PERA, this Court frequently looks to the interpretation of analogous provisions of the NLRA by the federal courts"); *Gibraltar School District v. Gibraltar MESPA-Transportation*, 443 Mich. 326, 335, (1993) ("We have long recognized that Michigan's public employment relations act is modeled on the NLRA. Although not controlling, we look to federal precedents developed under the NLRA for guidance in our interpretation of the PERA") (internal citations omitted). Section 8(2)(a) of the NLRA makes it an unfair labor practice "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to

5

it." 29 U.S.C. § 158(a)(2). This language mirrors the language found in section 10(1)(b) of the

PERA. Section 8(2)(a) was envisioned to promote union independence from employers. *See* 78

Cong. Rec. 10560 (1934).

Defendants argue that the purpose of Act 53 and section 10(1)(b) is "to declare and

protect the rights and privileges of public employees." This is but one phrase in the title of Act

53.[1] Defendants have simply handpicked one descriptor out of many for Act 53 and declared it

the purpose of Section 10(1)(b) as a whole. The Court will look to the original purpose of section

10(1)(b) when determining whether the amendment is rationally related to a legitimate

government purpose. Given that neither the Unions nor Defendants have provided any evidence

on the original intent of section 10(1)(b), the Court, as does the Michigan Supreme Court, will

look to the NLRA for guidance. Act 53 will be analyzed against the purpose of promoting union

independence.

Defendants offer the Court three reasons for the recent amendment: (1) cost savings; (2)

the union's accountability to its members; and (3) a check on union power. None of these three

reasons, in any sense, advances union independence. The first two reasons have nothing to do

with the unions themselves. As to cost savings, Defendants provided the Court a copy of the

Legislative Analysis for House Bill 4929. This analysis concludes that "[House Bill 4929] would

have no significant fiscal impact on school districts" because fee deductions are largely

automated and some collective bargaining agreements require the union to reimburse the school

---

[1] The full text reads: "AN ACT to amend 1947 PA 336, entitled "An act to prohibit strikes by certain public employees; to provide review from disciplinary action with respect thereto; to provide for the mediation of grievances and the holding of elections; to declare and protect the rights and privileges of public employees; to require certain provisions in collective bargaining agreements; and to prescribe means of enforcement and penalties for the violation of the provisions of this act," by amending the title and section 10 (MCL 423.210), the title as amended by 2011 PA 9." H.B. 4929.

6

district for payroll deductions. [Docket No. 25, Ex. 1]. During oral arguments, Defendants could

not provide anything to show that Act 53 would result in costs savings or what those cost savings

would be.[2] Defendants have undercut their own argument. The legislative analysis they rely on

concludes that any savings would be "minimal" and they failed to provide any other support. It is

difficult to connect cost savings to the goal of union independence, especially when that cost

savings is "minimal." Defendants were also unable to explain, let alone show, how cost savings

was not applicable to any other similarly situated union in the public sector that is facing

budgetary cuts.

    As with cost savings, the Court again draws a blank when attempting to draw a bridge

between union accountability and promoting the goal of independence from employer control.

Defendants argue that teachers will have bigger paychecks, which will allow them to demand

more union accountability. The decision to withdraw membership dues is voluntary. A public

school employee is not required to pay their dues in this manner.[3] The Court fails to understand

how a bigger paycheck will translate into more accountability by the unions when the decision to

withhold union dues is already voluntary. Nor is this goal in any way related to section

---

[2] Defendants rely on *Greater Houston Small Taxicab Company Owners Assoc. v. City of Houston*, 660 F.3d 235 (5th Cir. 2011), in their brief and at oral argument for the proposition that any reason, even if erroneous, is sufficient to pass rational scrutiny. In *Greater Houston*, the City of Houston passed an ordinance that issued new taxicab permits based on the size of the taxicab company. *Id.* at 237-238. The City argued that the reason for the ordinance was to (1) enhance competition; (2) increase service quality; and (3) promote more efficient use of taxicabs. *Id.* at 240. The City contended that the larger companies were more equipped to fulfill these purposes. *Id.* The Fifth Circuit Court of Appeals found that, although the City could have found a better way to distribute the permits, there was a rational relationship between the ordinance and the City's goals. *Id.* at 241. Defendants' reliance on this case is misplaced because there, unlike in the present case, the Fifth Circuit found some rational relationship. There is no rational relationship between cost savings and union independence.

[3] It appears that section 10(4) provides a mechanism for accountability. *See* MICH. COMP. LAWS § 423.210(4) ("By March 1 of each year, each exclusive bargaining representative that represents public employees in this state shall file with the commission an independent audit of all expenditures attributed to the costs of collective bargaining, contract administration, and grievance adjustment during the prior calendar year. The commission shall make the audits available to the public on the commission's website. For fiscal year 2011-2012, $100,000.00 is appropriated to the commission for the costs of implementing this subsection").

10(1)(b)'s purpose to promote union independence.

Placing a check on union power by effectively starving the Unions of their membership dues has absolutely no effect on union independence from employers. The attempt to undercut union power coupled with the legislative history of Act 53 strongly supports the argument that Defendants' real motive for the amendment was to suppress an unpopular group. Plaintiffs have shown that they are likely to prevail on the merits of their equal protection claim as Defendants have failed to provide a rational justification for Act 53. *See Wisconsin Education Assoc. Council v. Walker*, 824 F.Supp.2d 856, 870 (W.D. Wis. 2012) (finding that the act of precluding payroll deductions for general employees while allowing deductions for public safety employees did not promote the defendants' justification to decrease the risk of strike by police and fire fighters); *International Assoc. of Firefighters Local 3858 v. Germantown Firefighters Assoc.*, 98 F.Supp.2d 939, 949 (W.D. Tenn. 2000) (finding that there was no "rational basis for requiring the municipalities of some counties to deduct firefighter union dues while exempting other counties"); *Truck Drivers and Helpers Local Union No. 728 v. City of Atlanta*, 468 F.Supp. 620, 624 (N.D. Ga 1979) ("so long as the City of Atlanta has unions within both its police and fire departments, and so long as it is willing to withhold union dues from the firemen, it must, under the *equal protection clause*, make the same option open to police employees").

Defendants attempt to argue that they cannot apply the amendment evenhandedly to all union employees because they do not have jurisdiction over all public employees. The Court does not find this argument convincing. The PERA defines a public employee as "a person holding a position by appointment or employment in the government of this state, in the government of 1 or more of the political subdivisions of this state, in the public school service, in

8

a public or special district, in the service of an authority, commission, or board, or in any other branch of the public service." MICH. COMP. LAWS § 423.201(e). The Michigan Constitution allows "[t]he legislature [to] enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service." MICH. CONST. ART. 4, § 48. "[T]he PERA was intended to cover all public employees except for civil service employees specifically excluded by constitutional provision[,]" which is only a small subset of employees. *Central Michigan Univ. Faculty Ass'n v. Central Michigan Univ.*, 404 Mich. 268, 280-281 (1978). Defendants have jurisdiction over a larger group of employees than they would like the Court to believe. Again, Plaintiffs have shown that they are likely to prevail on their equal protection claim because Defendants have failed to provide the Court with one rational justification for their decision to single out school unions at the expense of all the unions that it maintains jurisdiction over. The Court finds that the Unions have demonstrated a likelihood of success as to the equal protection claim.

## 2. First Amendment

The First Amendment abhors regulations that discriminate against certain subjects or viewpoints or distinguishes among different classes of speakers. *Citizens United v. Federal Election Com'n*, 130 S.Ct. 876, 898-899 (2010). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

In *Ysursa v. Pocatello Education Association,* 555 U.S. 353 (2009), Idaho enacted a law that precluded public employees from using payroll deductions to contribute to political action

9

committees. The Supreme Court recognized that unions have difficulties collecting dues outside of payroll deductions. *Id.* at 359. The Supreme Court applied rational scrutiny to uphold the law reasoning "Idaho is under no obligation to aid the unions in their political activities." *Id.* The Supreme Court further noted that the statute was applied evenhandedly and was viewpoint neutral; the statute applied to all employees and did not single out any one viewpoint or speaker. *Id.* at 361 n3. The Supreme Court has left open the level of scrutiny that would apply if a law of this nature was not evenhanded and discriminated on the basis of viewpoint or speaker. *Id.* ("If the ban is not enforced evenhandedly, plaintiffs are free to bring an as applied challenge").

Prior precedent dictates that when the law discriminates against a small and identifiable group that is engaged in the business of speech, the Court may apply heightened or strict level scrutiny to determine whether a challenged regulation violates the First Amendment. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 638-40 (5th Cir. 2012) (applying strict scrutiny to a regulation that discriminated against only a small number of cable providers); *News America Pub., Inc. v. FCC*, 844 F.2d 800, 810-14 (D.C. Cir. 1988) (applying heightened scrutiny when FCC regulation burdened one broadcaster); compare *Ysursa*, 555 U.S. at 359 (applying rational scrutiny to government regulation banning political payroll deductions when applied to unions evenhandedly).

Two recent decisions from sister courts are further instructive. First, the Arizona District Court in *United Food and Commercial Workers Local 99 v. Brewer*, 817 F.Supp.2d 1118 (D. Ariz. 2011), invalidated an Arizona law that placed restrictions on public employees' ability to donate through payroll deductions depending on the identity of the organization. The statute at issue was not evenhandedly applied as in *Ysursa*. The Arizona District Court held that the law

10

was underinclusive, discriminated based on speaker and, therefore, subject to strict scrutiny. *Id.* at 1126.

The Wisconsin District Court in *Walker* struck down a statute which allowed public safety employees to have their union dues deducted through payroll while excluding general employees from this benefit. 824 F.Supp.2d at 870-76. The Wisconsin court noted that the law was underinclusive and invalidated the statute because the government could not provide a sufficient reason for treating the two classes of unions differently, allowing one group a benefit while denying a similarly situated group the same benefit. *Id.* at 873-76.

Act 53 by its application, not by its terms, affects speech. A union by its very nature is in existence to engage in expressive speech. Payroll deductions are the most convenient way to raise funds to support the Unions' expressive activities. Precluding payroll deductions would cause a substantial drop in revenue. "[S]electively prohibiting public employers from providing [payroll deductions] to [public school] employees and their unions necessarily diminishes their speech—both [school] employee's ability to support their union financially, as well as the union's ability to fund its speech." *Id.* at 871. The amendment by its application would burden speech for school unions and no other. The Unions would have to divert resources designated for member advocacy and representation to the collection of dues in order to keep the Unions' speech efforts alive. Defendants are essentially targeting only one viewpoint and one set of speakers for discrimination. Act 53 is underinclusive and Defendants have not provided sufficient justification to support Act 53's burdening speech for public school employees to the exclusion of other similarly situated public employees. *See Id.* at 873-76; *Brewer*, 817 F.Supp.2d at 1126. Plaintiffs have shown they are likely to succeed on the merits of their first amendment

11

claim.

**B.    Irreparable Harm**

Plaintiffs suffer irreparable harm absent injunctive relief in this case. The Unions that do not have a current collective bargaining agreement temporarily securing their contributions will experience immediate harm. The reduction of dues will hamper the Unions' activities and require resources to be redirected to collecting membership dues. Those that are subject to a collective bargaining agreement will experience the same effects when the collective bargaining agreements either expire or terminate or require renewal or revision. Defendants argue that the Unions' harm is remote and speculative. The Unions have indicated that the termination of payroll deduction to unions in the past has resulted in an immediate drop in revenue and resources available to dedicate to advocacy. Manpower that was engaged in advocacy prior to the termination of payroll deduction had to be reallocated to collecting dues from members, thereby decreasing speech. Such a threat is more than remote and speculative. Regardless, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012).

**C.    Harm to Others & the Public Interest**

The balance of harm weighs heavily in the Unions' favor. The Unions' have shown that there is a substantial likelihood of success on the merits; any harm to others necessarily will not outweigh the harm of the violation of constitutional rights without redress. *See Bays*, 668 F.3d at 825 ('if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment") (quoting *Deja Vu of Nashville,*

12

*Inc. v. Metro. Gov't of Nashville and Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001)).

Further, "it is always in the public interest to prevent violation of a party's constitutional rights."

*Id.* (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th

Cir. 1994)).

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Docket No. 11,

filed April 11, 2012] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants, their agents, and anyone acting in

concert or participation with Defendants or their agents are **IMMEDIATELY ENJOINED** from

enforcing Public Act 53's prohibition on payroll deduction of school employees' union dues and

service fees pending the resolution of this matter on the merits.

Although the parties have not raised the issue of bond pursuant to Federal Rule of Civil

Procedure 65(c), **IT IS ORDERED** that a security is not required given that this matter involves

a constitutional issue that affects the public interest.

**IT IS SO ORDERED.**

**S/Denise Page Hood**
**Denise Page Hood**
**United States District Judge**

Dated:  June 11, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of
record on June 11, 2012, by electronic and/or ordinary mail.


**S/LaShawn R. Saulsberry**

13

Case Manager